**In re PALAU CORPORATION, Debtor.**

**NATIONAL LABOR RELATIONS BOARD, Appellant,**

v.

**Edward M. WALSH, Trustee for Palau Corporation, Debtor, Appellee.**

**No. 92–55720.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1993.

Decided March 8, 1994.

Eric G. Moskowitz, Deputy Assistant General Counsel for Special Litigation, Washington, D.C., for the appellant.

Linda Sorensen, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, California, for the appellee.

Before: ALARCON, LEAVY, and KLEINFELD, Circuit Judges.

LEAVY, Circuit Judge:

In this case we must decide whether an unlawfully discharged employee's claim for backpay is entitled to administrative priority when his claim accrued after the former employer filed a petition in bankruptcy. For the reasons which follow we conclude that the claim is not entitled to priority as an

administrative expense of the bankruptcy estate.

## FACTS AND PRIOR PROCEEDINGS

On November 3, 1980, the Palau Corporation ("Palau") laid off two of its employees, Ralph Montoya ("Montoya") and Michael Cook ("Cook"). Ten days later Montoya filed charges with the National Labor Relations Board ("NLRB"), alleging that Palau had engaged in unfair labor practices. Palau filed a petition in bankruptcy the following month (December 10, 1980), seeking reorganization and protection from creditors under Chapter 11 of the Bankruptcy Code.

On January 30, 1981, the Regional Director for the NLRB issued a complaint against Palau based on Montoya's charges. Palau responded to the complaint and, on August 6, 1981, a hearing with oral argument was held before an administrative law judge ("ALJ"). The ALJ issued his decision on January 28, 1982, finding that Palau's act of laying off Montoya and Cook constituted a violation of the National Labor Relations Act ("Act"), 29 U.S.C. §§ 151–169, and directing Palau to offer Montoya and Cook reemployment. Although it is not clear to what extent Palau attempted to comply with this directive, it is undisputed that Palau did not challenge the ALJ's findings on appeal, which were affirmed by the NLRB on March 3, 1982.

Meanwhile, the bankruptcy court converted the proceedings from Chapter 11 to a Chapter 7 liquidation on February 7, 1982. Palau ceased operations and Edward M. Walsh was appointed to serve as the estate's trustee in bankruptcy ("Trustee"). On May 28, 1982, the NLRB filed its initial proof of claim with the bankruptcy court, demanding a total of $66,839.04 in back wages and contributions to employee benefit plans for the two former employees. The NLRB further argued that the entire claim was entitled to first priority as an administrative expense of the bankruptcy estate rather than third priority as a wage claim.[1]

The Trustee eventually allowed the claim but denied it any administrative priority. The NLRB filed its opposition to the Trustee's determination on July 31, 1991, and moved for a hearing on the question of whether the claim was entitled to treatment as an administrative expense of the estate. Along with its opposition and motion for hearing the NLRB also filed an amended proof of claim for $13,069.40, representing Cook's[2] total claimed net backpay ($8,428.00) and net fringe benefit contributions ($4,641.40). The NLRB argued that $2,482.00 of this total consisted of pre-petition net backpay ($2,091.00) and pre-petition net fringe benefit contributions ($391.00), while the remaining $10,587.40 consisted of post-petition net backpay ($6,337.00) and post-petition net fringe benefit contributions ($4,250.40).

On October 10, 1991, the bankruptcy court issued an amended order allowing the NLRB's claim for pre-petition backpay (i.e., that which accrued between November 3, 1980, and December 10, 1980), but treating the remaining claim for post-petition backpay (i.e., that which accrued between December 10, 1980, and February 7, 1982) as a general unsecured claim rather than as an administrative expense of the estate. The NLRB challenged the second half of this ruling on appeal to the Bankruptcy Appellate Panel

---

1. "Wage claims are entitled to a first priority by [11 U.S.C. §] 507(a)(1) to the extent they are administrative expense claims. They should be distinguished from the priority given by [11 U.S.C. §] 507 to prepetition unsecured claims for wages ... earned within ninety days before the filing of the petition. Such prepetition claims are accorded a third priority under section 507(a)(3). Wage claims not falling in one of these priorities are general unsecured claims against the debtor." 3 William M. Collier, *Collier on Bankruptcy* ¶ 503.04[iii] n. 23 (Lawrence P. King, et al. eds., 15th ed. 1993) (internal citation omitted).

2. By 1991 Montoya and his wage claims were no longer part of this action. The $13,069.40 claim represents the difference between what Cook allegedly would have earned had he not been discharged and the amount he received by working elsewhere. The pre-petition figures refer to accrued earnings between November 3, 1980, when Cook was laid off, and December 10, 1980, when Palau filed its Chapter 11 petition. The post-petition figures refer to accrued earnings between December 10, 1980, and February 7, 1982, when the Chapter 11 proceedings were converted to Chapter 7.

("BAP"). The BAP unanimously affirmed the bankruptcy court's determination in a published opinion, *National Labor Relations Bd. v. Walsh (In re Palau Corp.)*, 139 B.R. 942 (9th Cir. BAP 1992), and the NLRB has timely appealed.

## ANALYSIS

### *Standard of Review*

▮ We independently review the bankruptcy court's decision because we are in as good a position as the BAP to examine the lower court's findings of fact and conclusions of law. *See Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom)*, 13 F.3d 321, 323 (9th Cir.1994). We review the bankruptcy court's findings of fact for clear error and examine its legal conclusions *de novo. See id.*

### *Discussion*

This appeal stands or falls on the answer to one question: Is the backpay that accrues to an unlawfully discharged employee after his former employer files a petition in bankruptcy entitled to administrative priority as an expense of the bankruptcy estate? For the reasons which follow we conclude that it is not.

### I

The Bankruptcy Code provides that the administrative expenses of a bankruptcy estate are to be accorded a first priority of payment. 11 U.S.C. § 507(a)(1).[3] Administrative expenses are defined as "the actual, necessary costs and expenses of preserving the [bankruptcy] estate, including wages ... for services rendered after the commencement of the case[.]" 11 U.S.C. § 503(b)(1)(A). Wage claims not entitled to administrative priority are treated as general

unsecured claims entitled to the lowest priority, except that the first $2,000.00 of an individual's wages earned within ninety days of his employer's filing of a bankruptcy petition will be accorded a third priority. *See* 11 U.S.C. § 507(a)(3).[4]

Put simply, the Bankruptcy Code divides wage claims into categories of pre- and post-petition, and accords varying levels of priority to those claims. Post-petition wages deemed necessary for the preservation of the bankruptcy estate are treated as though fully secured and are accorded first priority treatment; pre-petition wages earned within 90 days of the employer's bankruptcy filing are treated as if partially secured (i.e., up to $2,000.00) and receive third priority treatment; while all other wages, *i.e.*, those earned within the 90–day time frame but in excess of $2,000.00, those earned outside the 90–day time frame, and those for services not deemed necessary for the preservation of the bankruptcy estate, are treated as unsecured.

The NLRB argues that Cook's post-petition backpay is entitled to administrative priority as a matter of federal bankruptcy law because, had Palau not laid off Cook, Cook's post-petition services would have been necessary for the preservation of the bankruptcy estate. *See* 11 U.S.C. § 503(b)(1)(A). Underlying this contention are two arguments, one explicit, the other implicit. With respect to the former, the NLRB insists that the National Labor Relations Act controls rather than the Bankruptcy Code, *i.e.*, because Cook's wage claim is the result of an unfair labor practice, federal labor law governs the terms and conditions of its payment. As for the latter, the NLRB contends that Palau should not be allowed to profit—or, conversely, Cook should not be made to suffer—as the result of Cook's wrongful discharge.[5]

---

**3.** "(a) The following expenses and claims have priority in the following order: (1) First, administrative expenses allowed under section 503(b) of this title...." 11 U.S.C. § 507(a)(1) (in relevant part).

**4.** "(a) The following expenses and claims have priority in the following order: * * * (3) Third, allowed unsecured claims for wages ... (A) earned by an individual within 90 days before the date of the filing of the petition ... but only (B)

to the extent of $2,000 for each such individual." 11 U.S.C. § 507(a)(3) (in relevant part).

**5.** This second contention is unworthy of serious discussion. Any suffering by Cook will be identical to that of similarly situated creditors and, whatever Palau's wrongdoing in laying off Cook, Palau is defunct and any attempt to "punish" the bankruptcy estate for Palau's sins would only hurt innocent creditors.

As already noted, both the bankruptcy court and the BAP rejected the NLRB's position. The essence of their holdings was that, while federal labor law determines whether or not an unfair labor practices claim exists, federal bankruptcy law determines the priority of such a claim, and Cook's claim did not qualify as an administrative expense under federal bankruptcy law because he performed no services during the period in question and because the costs associated with his wage claim could not fairly be characterized as necessary to preserve the bankruptcy estate. Each of these points will be discussed in turn.

## II

■ The question of whether we must look to federal labor law or to federal bankruptcy law to determine the priority of Cook's wage claim need not detain us. In *Kapernekas v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 148 B.R. 207 (D.Del.1992), a case nearly on all fours with the instant appeal, the district court upheld the bankruptcy court's denial of administrative priority to a post-petition accrued backpay claim filed by an unlawfully discharged employee of a company in Chapter 11. In reaching this conclusion the district court held that

> while laws governing unfair labor practices, such as the National Labor Relations Act ... govern the question of whether or not a claim for compensation for unfair labor practices exists and what the value of that claim is, it is the Bankruptcy Code which determines the priority and allowability of any and all claims filed in a bankruptcy proceeding. Therefore, since the issue in this case is not whether [the unlawfully discharged employee] has a claim for back pay but rather whether that claim should have administrative priority status, it is the Bankruptcy Code which governs the issue.

148 B.R. at 211. This conclusion is consistent with longstanding law. *See e.g. Nathanson v. National Labor Relations Bd.*, 344 U.S. 25, 28–29, 73 S.Ct. 80, 82–83, 97 L.Ed. 23 (1952) ("The policy of the National Labor Relations Act is fully served by recognizing the claim for back pay as one to be paid from the [bankruptcy] estate. The question whether it should be paid in preference to other creditors is a question to be answered from the Bankruptcy Act."). *Cf. Federal Deposit Ins. Corp. v. Soderling (In re Soderling)*, 998 F.2d 730, 733 (9th Cir.1993) (while state law governed determination of whether party had an interest in community property, federal bankruptcy law controlled as to determination of status and priority of claim involving that property); *California Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 927–31 (9th Cir.1993) (per curiam) (where environmental cleanup and federal bankruptcy laws apparently conflicted, federal bankruptcy law governed determination of claim's priority and dischargeability).

In light of the above we hold that, while the Act is dispositive with respect to the question of whether Cook had a valid claim for compensation as the result of Palau's unlawful discharge, the Bankruptcy Code controls our determination of that claim's priority.

## III

■ A fundamental principle of statutory construction is that, "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). As already noted, the relevant provision of the Bankruptcy Code plainly states that administrative priority will only be accorded wage claims involving "the actual, necessary costs and expenses of preserving the estate, including wages ... for services rendered after the commencement of the case[.]" 11 U.S.C. § 503(b)(1)(A).

■ We have previously held that "[t]he terms 'actual' and 'necessary' are [to be] construed narrowly[,]" *i.e.*, administrative expenses "must be the actual and necessary costs of preserving the estate for the benefit of its creditors." *Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir.1988). As

the BAP correctly noted in the instant appeal,

> where the employee does not work during the postpetition period, there is no postpetition benefit to the estate and no postpetition conduct to justify the allowance of backpay as an administrative expense. Simply stated, taking money from the estate to pay back wages to an individual who did not work is detrimental, not beneficial to the estate.

\* \* \* \* \* \*

It is clear from the plain language of Section 503(b)(1)(A) that administrative priority is given only to those expenses which represent services *rendered* after the commencement of the case. The term "render" means to perform, to give or to furnish. Because Cook did not perform, give or furnish any actual services to the Debtor, the Board's claim for backpay during the postpetition period does not represent actual or necessary costs of preserving the estate. Accordingly, the Board's claim is not entitled to administrative priority.

*In re Palau Corp.,* 139 B.R. at 944 (internal quotation and citations omitted; emphasis in original). *Accord, In re Continental Airlines, Inc.,* 148 B.R. at 212 ("Section 503(b)(1)(A) clearly requires that for wage claims to qualify for administrative priority status a service must have been rendered to the estate post-petition.").[6]

Citing *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), the NLRB urges us to ignore the plain meaning of the statute and hold that Cook's wage claim is entitled to administrative priority because it was only as the result of Palau's post-petition failure to reinstate Cook that he was precluded from rendering services to his former employer. We disagree. *Brown* is inapposite, involving post-petition tort-like conduct resulting in damages, while here we are dealing with a debtor's pre-petition conduct resulting in an imposition of wages con-

structively "earned" by a non-working former employee. Moreover, it is not clear from this record that Palau made no efforts to reinstate Cook or otherwise comply with the ALJ's directive. Finally, to hold as the NLRB urges would require us to ignore the very purpose of bankruptcy—*i.e.,* allowing debtors to start fresh while fairly apportioning losses among the creditors—in favor of one particular class of creditors.

Applying the above analysis to the facts of the instant appeal results in the following treatment of Cook's wage claim: The first $2,000.00 of his pre-petition wage claim ($2,482.00) is entitled to third priority under 11 U.S.C. § 507(a)(3); the balance of Cook's pre-petition wage claim ($482.00) is entitled to the status of a general unsecured debt; and, because none of Cook's post-petition wage claim ($10,587.40) can be fairly characterized as necessary for the preservation of the bankruptcy estate under 11 U.S.C. § 503(b)(1)(A), it, too, must be treated as a general unsecured debt. That is exactly what both the bankruptcy court and the BAP did here, and we find no error with that approach.

### CONCLUSION

Because we find no merit to any of the government's remaining arguments, the decision appealed from is

AFFIRMED.

---

**6.** In reaching this conclusion, the district court in *In re Continental Airlines, Inc.* rejected the NLRB's argument—reiterated in the instant appeal—that the "including wages" language of section 503(b)(1)(A) should not be read as meaning "including *only* wages". 148 B.R. at 212 &

n. 8, 216–17 & n. 13. We reject this argument and agree with the district court's conclusion that Congress intended the "including wages" language to apply to the "for services rendered" clause of that section. *See id.* at 212 n. 8.