**In re ALLEN CARE CENTERS, INC., an Oregon corporation, Debtor.**

Civ. No. 94–726–RE.
Bankruptcy No. 390–36679–P7.

United States District Court, D. Oregon.

Sept. 22, 1994.

Theodore R. Kulongoski, Atty. Gen. of Or., Virginia L. Linder, Sol. Gen., Stephanie L. Striffler, Asst. Atty. Gen., Salem, OR, for appellant State of Oregon.

Gregg D. Johnson, Ater Wynne Hewitt Dodson & Skerritt, Portland, OR, for appellee Ronald G. Witcosky, Trustee.

**OPINION**

REDDEN, Chief Judge:

The State of Oregon, Department of Human Resources, Senior & Disabled Services Division (the State), appeals the order of Bankruptcy Judge Polly Higdon. 163 B.R. 180. Under that ruling, the State holds a general, unsecured claim and is not entitled to administrative expense priority under 11 U.S.C. § 503(b)(1)(A) for costs incurred in closing the debtor's nursing facility. Oral argument on appeal was held on September 19, 1994. For the reasons that follow, the order of the bankruptcy court is affirmed.

## BACKGROUND

The debtor, Allen Care Centers, operated three nursing and residential care facilities licensed by the State. Facing financial difficulties, the debtor filed a petition for reorganization under Chapter 11 on December 10, 1990. The case was later converted into a liquidation proceeding under Chapter 7.

On December 19, 1990, the debtor contacted the State to discuss closing one of the facilities, Care West. The debtor was concerned that soon it would not be able to meet its operating expenses and wanted the State to seek a trustee to operate and close Care West.

Under Oregon law, the State may, under certain circumstances, petition in state court for the appointment of a trustee to operate a nursing facility. *See* Or.Rev.Stat. 441.286 (1993). The trustee's expenses are paid from a state fund and the operator of the facility—the debtor in this case—is responsible for repaying the expenditures. *Id.* 441.303, 441.318(2).

The debtor filed motions in state and bankruptcy courts aimed at forcing the State to seek appointment of a trustee. In one of the motions, the debtor stated that it was "unable to adequately fund operations, creating threatened staffing problems with the potential to cause physical or mental harm to patients." Excerpt of Record (ER), 261. The State was concerned that the debtor would not be able to reimburse the State fund for expenses the State would incur in closing the facility. ER 294–317.

On January 30, 1991, Bankruptcy Judge Elizabeth Perris held a hearing on debtor's motion to abandon Care West. The transcript of the hearing (as well as the preceding state court hearing) reveals that the State delayed seeking a trustee to operate the facility with the hope of obtaining an assurance from the bankruptcy court that the State would receive an administrative expense priority. ER 139–144, 294–317. Judge Perris described the State's actions as "jockeying over economics" and expressed her desire that "the State ... get on with getting the trustee appointed so that the facility—so that the residents can be placed and the facility can be closed." ER 139–40.

Judge Perris refused to give the State any assurance that the trustee's expenses would, be treated as administrative expenses (and therefore would be more likely to be recouped) and indicated that the decision would be made only after the expenses were incurred. ER 136–37. Judge Perris's order allowed the debtor to "abandon" Care West unless the State obtained a trustee on or before February 1, 1991, in which case the abandonment would occur when the residents of Care West were moved or 60 days from the appointment of the trustee, whichever happened first. ER 159–60.

On January 31, 1991, a trustee was appointed and all the residents were moved to other facilities by April 1, 1991. In operating Care West, the trustee incurred expenses of $232,695.50. Appellee, the bankruptcy trustee, did not object to payment of $102,695.50 of the expenses because they were incurred by debtor before the State took over the facility.

In a written memorandum opinion, Judge Higdon rejected the State's claim that the costs it incurred were administrative expenses under § 503(b). Memorandum Opinion, January 19, 1994. 163 B.R. 180.

## STANDARDS FOR REVIEW

■ The bankruptcy court's conclusions of law are reviewed *de novo* by this court. *In re Kennerley*, 995 F.2d 145, 146 (9th Cir. 1993). The bankruptcy court's findings of fact are reviewed under the "clearly erroneous" standard. Fed.R.Bankr.P. 8013; *Kennerley*, 995 F.2d at 146.

## DISCUSSION

A bankruptcy judge has "broad discretion in determining whether to award administrative expense priority." *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir.1988). Administrative expenses are "the actual, necessary costs and expense of preserving the estate[.]" 11 U.S.C. § 503(b).

■ The State argues that its trustee's expenses in operating Care West and transferring elderly residents to other facilities fit this definition. It relies on analogies to the

progeny of two Supreme Court cases, *Midlantic National Bank v. New Jersey Dept. of Envir. Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), and *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

### 1. *Midlantic*

In *Midlantic,* the Court held that a debtor could not "abandon" estate property in contravention of state and federal laws designed to protect public health and safety. *Midlantic,* 474 U.S. at 507, 106 S.Ct. at 762. The Court emphasized that the exception created by its holding was narrow. *Id.* at n. 9. Since then, courts have held that if environmentally contaminated property cannot be abandoned in violation of the law, then expenses incurred by others to clean-up environmental contamination of the debtor's estate are administrative expenses. *See, e.g., In re Peerless Plating Co.,* 70 B.R. 943 (W.D.Mich.1987), *In re Stevens,* 68 B.R. 774, 783 (D.Me.1987).

By analogy, the State argues that the debtor could not have "abandoned" Care West without complying with state law ensuring the health and safety of the residents. Therefore, the State's expenditures, like expenditures to clean-up environmental contamination, are administrative expenses.

The Ninth Circuit construes administrative expenses narrowly. "Any claim for administrative expenses and costs must be the actual and necessary costs of preserving the estate for the benefit of its creditors." *Dant & Russell,* 853 F.2d at 706. In *Dant & Russell,* the court emphasized that the benefit to the estate must be "actual" and not potential. *Id.* These principles were recently emphasized by the bankruptcy appellate panel for the Ninth Circuit. *In re Daniel C. Hanna,* 168 B.R. 386, 388 (9th Cir. BAP 1994).

The State's analogy to the environmental cases fails when the facts of this case are analyzed. First, in this case there was no actual benefit to the debtor's estate. While it is unquestionable that the residents of Care West benefitted from the State's action, under *Dant & Russell,* there must be actual benefit to the debtor's estate. *See In re Woodstock Associates I,* 120 B.R. 436, 452

(N.D.Ill.1990) (holding that nursing home operating expenses did not benefit the estate).

The State argues that if it had not stepped in the residents, deprived of proper care, would have brought tort claims against the estate, depleting its assets. This potential benefit does not suffice. *Dant & Russell,* 853 F.2d at 706 ("the mere potential of benefit to the estate does not satisfy this requirement"). The Ninth Circuit in *Dant & Russell* distinguished between environmental cases where the estate owned, rather than leased, the contaminated realty. *Id.* at 709. In the former, the estate benefitted from clean-up expenditures. In the latter, it did not. *Id.* In both cases, the estate faces potential tort liability from the effects of the contamination. Therefore, averting potential tort claims, alone, does not benefit the estate.

Second, contrary to the State's contention, there was no imminent threat to public health and welfare. The record reveals that the State delayed seeking a trustee to operate the debtor's facility because it was concerned about protecting its financial position. In fact, the bankruptcy court prodded the State to seek the trustee. This "jockeying over economics," as Judge Perris described it, suggests that the threat to the patients' health was not imminent. As the bankruptcy court properly found, there was "no evidence ... that at any time up to the appointment of the state trustee the debtor or debtor in possession had not provided appropriate care." Memorandum Opinion, 163 B.R. 180, 183. Thus, the harm faced was not imminent and is not analogous to the threats from hazardous wastes in the environmental cases relied upon by the State.

Third, this case, unlike the environmental cases, does not involve a violation of law by the debtor. While the debtor, in a motion filed in January 1991, stated that it was "unable to adequately fund operations, creating threatened staffing problems with the potential to cause physical or mental harm to patients," the record does not establish that the debtor violated any law protecting the health and safety of its patients. Judge Higdon's finding, that the debtor did not violate

**400**

state or federal law protecting health and safety, was not clearly erroneous.

In short, Judge Higdon was correct in finding that the environmental clean-up expense cases following *Midlantic* are not analogous to the facts of this case and that the Ninth Circuit's reasoning in *Dant & Russell* supports denial of administrative expense priority where the estate has received no benefit.

### 2. *Reading*

In *Reading,* the Supreme Court held that payments to victims of the bankruptcy trustee's negligence were administrative expenses. *Reading,* 391 U.S. at 485, 88 S.Ct. at 1766. Lower courts have followed *Reading* and given administrative expense priority to expenses paid for the torts of the debtor or trustee. *See, e.g., In re Charlesbank Laundry,* 755 F.2d 200 (1st Cir.1985) (expenses incurred from civil penalties from violation of an injunction by the trustee), *In re N.P. Mining Co.,* 963 F.2d 1449 (11th Cir. 1992) (penalties for environmental violations), *In re Vermont Real Estate Inv. Trust,* 25 B.R. 804 (Bankr.D.Vt.1982) (expenses to abate nuisance).

However, as Judge Higdon noted, there is no evidence of debtor negligence or wrongdoing that would bring this case within the narrow rule of *Reading.*

### CONCLUSION

Although it is unfortunate that the State is left with an unsecured claim for its expenses, here Judge Higdon, in a well-reasoned opinion, reached the correct result. The bankruptcy court's order is, therefore, affirmed.