In re ALLEN CARE CENTERS, INCORPORATED, an Oregon Corporation, Debtor.

STATE OF OREGON, DEPARTMENT OF HUMAN RESOURCES, Appellant,

v.

Ronald WITCOSKY, Trustee, Appellee.

No. 94–36060.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1995.

Decided Sept. 30, 1996.

Theodore R. Kulongoski and Stephanie L. Striffler, Assistant Attorneys General, Salem, OR, for appellant.

Gregg D. Johnson, Ater, Wynne, Hewitt, Dodson & Skerritt, Portland, OR, for appellee.

Before: BROWNING, RYMER and T.G. NELSON, Circuit Judges.

PER CURIAM:

In a Chapter 7 bankruptcy proceeding, the State of Oregon's Department of Human Resources ("Department") claimed administrative expense priority for costs incurred by a state court-appointed trustee in closing a nursing home operated by debtor Allen Care Centers, Inc. The bankruptcy court denied the claim. *In re Allen Care Ctrs., Inc.,* 163 B.R. 180 (Bankr.D.Or.1994). The district court affirmed, *In re Allen Care Ctrs., Inc.,* 175 B.R. 397 (D.Or.1994), and the Department timely appealed. We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291, and affirm.

### I.

Allen Care, which operated three state-licensed nursing and residential care facilities, filed for Chapter 11 bankruptcy protection on December 10, 1990. Shortly thereafter, it notified the Department that one of its facilities, Care West, was suffering "intolerable losses and negative cash flow." The Department suggested that pursuant to an Oregon statute, it could ask a state court to appoint a trustee to oversee the operation of Care West.

The statute in question, Or.Rev.Stat. § 441.286, allows a state court to appoint a trustee when "the health and welfare of patients in a facility are now or in the immediate future will be in jeopardy." The trustee operates the nursing home, using money from a Department reserve fund to cover any shortfall between income and expenses. *Id.* §§ 441.289, 441.301. Money borrowed from

the fund constitutes a loan to the facility's owner as well as a lien against its property. *Id.* §§ 441.318(2), (3). The owner may limit its liability, however, by giving notice that it intends to close the facility. Once notice is given, the state trustee has sixty days to complete the closing; the owner is not responsible for costs incurred after the sixty-day period ends. *See id.* § 441.316(3).

The Department was reluctant to seek appointment of a trustee without receiving assurances from Allen Care that it would be reimbursed for the cost of closing Care West. It also sought assurances that Allen Care would not object to administrative priority for expenses incurred by the state trustee. Allen Care rejected the Department's suggestions.

When the parties could not reach a compromise, Allen Care filed a motion in Bankruptcy Court, seeking to abandon Care West as burdensome to the estate under 11 U.S.C. § 554(a). The Bankruptcy Court, concerned that abandonment would be barred under *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), unless the potential threat to patient health and safety was averted by use of the trustee procedure, sought to force appointment of a state trustee. The Bankruptcy Court entered an order providing that Allen Care could abandon Care West in seven days, but that abandonment would be delayed if the Department petitioned the state court to appoint a state trustee. The parties stipulated to the appointment of a state trustee on January 31, 1991, the state court made the appointment, and Allen Care immediately gave notice it intended to close Care West.

■ The state trustee advanced approximately $200,000 in Department funds to close Care West and transfer its patients to other facilities. The trustee filed an administrative expense claim in June 1991. In May 1993, Allen Care's bankruptcy was converted from Chapter 11 to Chapter 7, and a bankruptcy trustee was appointed. The bankruptcy trustee objected to the Department's claim for administrative priority, arguing the Department was not entitled to priority because it had done nothing to preserve the estate for the benefit of the creditors. The Bankruptcy Judge agreed, holding the Department was not entitled to administrative priority because its actions did not result in "actual benefit" to the estate. *In re Allen Care Ctrs., Inc.,* 163 B.R. at 187–88. The district court affirmed, *In re Allen Care Ctrs., Inc.,* 175 B.R. at 400, and the Department appealed. We affirm.[1]

## II.

■ A claimant seeking administrative expense priority must prove the debt benefitted the estate. *See* 11 U.S.C. § 503(b)(1)(A) (administrative expenses are the "actual, necessary costs and expenses of preserving the estate"); *Microsoft Corp. v. DAK Indus. (In re DAK Indus.),* 66 F.3d 1091, 1094 (9th Cir.1995); *In re Dant & Russell,* 853 F.2d at 706. The Department contends that under *Midlantic,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 and *Reading v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), the cost of closing Care West was a necessary cost of preserving the estate.

## A.

■ Although the Bankruptcy Act provides generally that a trustee may "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate" after notice and a hearing, 11 U.S.C. § 554(a), the Supreme Court held in *Midlantic* that "a trustee may not abandon property in contra-

---

1. Allen Care argues we are to review the Bankruptcy Court's decision for abuse of discretion because bankruptcy courts "have broad discretion in determining whether to award administrative expense priority." *Burlington Northern R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 707 (9th Cir.1988). In this case, however, the Bankruptcy Court's decision was based on its legal conclusion that our previous cases and Supreme Court precedent barred it from granting administrative priority to the State. We review this decision of law de novo. *See NLRB v. Walsh (In re Palau Corp.),* 18 F.3d 746, 749 (9th Cir.1994). Moreover, because we are in as good a position as the district court to examine the Bankruptcy Court's findings of fact and conclusions of law, we review the Bankruptcy Court's decision independently. *Id.*

vention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic*, 474 U.S. at 507, 106 S.Ct. at 762. The rationale underlying this exception to the abandonment power is that in exercising this power in the course of managing the estate, the bankruptcy trustee has a statutory and common law duty not to abrogate state laws relating to public health and safety. *Id.* at 502, 505, 106 S.Ct. at 760, 761. Courts applying *Midlantic* have held that actual and necessary costs of redressing violations of health and safety laws are administrative expenses under 11 U.S.C. § 503(b)(1)(A).[2] *See Pennsylvania Dep't of Envtl. Res. v. Conroy*, 24 F.3d 568, 569–70 (3d Cir.1994); *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1010 (2d Cir.1991); *Lancaster v. Tennessee (In re Wall Tube & Metal Products Co.)*, 831 F.2d 118, 123–24 (6th Cir.1987).

■ *Midlantic* does not control this case. Allen Care had not violated any Oregon law protecting the health and safety of its patients before it petitioned the Bankruptcy Court for permission to abandon Care West, and Allen Care abandoned Care West in full compliance with Oregon statutes setting forth the procedure for closing a nursing home. Because the costs incurred by the state court-appointed trustee were not incurred to remedy a violation of health or safety laws, the Department cannot claim administrative expense priority for those costs.

The Department argues administrative expense priority should be extended to the state trustee's claim because the bankruptcy estate might have faced tort liability if Allen Care had abandoned its patients and the trustee had not assumed responsibility for their care. However, the Supreme Court admonished that the *Midlantic* exception to the abandonment power is narrow and "does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment", 474 U.S. at 507 n. 9, 106 S.Ct. at 762 n. 9, and this court has suggest-

ed that administrative expense priority is not available for expenditures merely because they avert potential tort liability—it must appear that actual benefit accrued to the estate. *See In re Dant & Russell, Inc.*, 853 F.2d at 708–09.

**B.**

■ The Department contends its expenditures in closing Care West are entitled to administrative priority under *Reading* as "costs ordinarily incident to operation of a business." In *Reading* the Supreme Court gave administrative priority to the claims of victims of a fire negligently caused by the receiver, holding that "actual and necessary costs" encompass "costs ordinarily incident to operation of a business," including damages resulting from the receiver's negligence. *Reading*, 391 U.S. at 483–84, 88 S.Ct. at 1766.

The Department argues that providing for the care and safe transfer of nursing home residents when the home closes is ordinarily incident to running the business. However, we have held that the rule of *Reading* applies only in cases involving "post-petition tort-like conduct," *In re Palau*, 18 F.3d at 751, and the Department's expenses resulted, not from any postpetition wrongdoing, but simply from Allen Care's insolvency.

**III.**

We affirm the bankruptcy and district courts' holdings that the costs the state court-appointed trustee incurred in closing Care West are not administrative expenses. The expenditures did not benefit the estate and did not result from postpetition tort-like conduct.

---

**2.** This question was not before the Supreme Court in *Midlantic*. 474 U.S. at 498 n. 2, 106 S.Ct. at 758 n. 2.