**In re METRO FULFILLMENT, INC., Debtor.**

**Maria Gonzalez; Maria Hernandez, Appellants,**

**v.**

**David Gottlieb, Chapter 7 Trustee, Appellee.**

**BAP No. CC 02–1527–BMoP.**

**Bankruptcy No. SV 01–21763–AG.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on March 19, 2003.

Filed June 4, 2003.

Cassandra Stubbs, Bet Tzedek Legal Services, North Hollywood, CA, for Maria Gonzalez and Maria Hernandez.

David L. Neale, Levene, Neale, Bender & Rankin, L.L.P., Los Angeles, CA, for David Gottlieb, Ch. 7 Trustee.

Before BRANDT, MONTALI, and PERRIS, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

In this appeal, we are asked to determine whether claims for penalty wages under California law for failure to timely pay postpetition wages, and for paying postpetition wages with checks drawn on insufficient funds, are entitled to administrative priority under § 503(b)(1)(A).[1]  The

---

**1.** Absent contrary indication, all section and    chapter references are to the Bankruptcy

bankruptcy court concluded that they were not, reasoning that penalty wages were not actual and necessary costs of preserving the estate. We REVERSE.

## I. FACTS

The facts are undisputed. Metro Fulfillment, Inc. ("Debtor") operated a warehouse in Newhall, California. It filed for chapter 11 protection on 18 December 2001.

Maria Hernandez and Maria Gonzalez (jointly, "Claimants") were employed in Debtor's packing and shipping department at minimum wage. Hernandez was employed from 7 November 2001 until she quit on 13 February 2002. Debtor owed her several weeks' wages. She received one check for regular wages dated 18 January 2002 for $440.78, which was returned for insufficient funds ("NSF"); Debtor has never paid Hernandez these wages.

Gonzalez was employed from 5 October 2001 until she quit on 5 May 2002. Debtor also owed her several weeks of wages. She received a check dated 18 January 2002 for $222.22, which was returned NSF; Debtor has never paid Gonzalez these wages.

Claimants filed separate but similar motions for payment of administrative claims under § 503(b)(1)(A), and entitlement to priority under § 507(a)(3)(A) for postpetition wages and penalties under California Labor Code ("CLC") §§ 203 and 203.1: [2]

|  | Regular Wages | Penalty | Total |
|---|---|---|---|
| Hernandez | $1139.82 | $3240.00 | $4379.82 |
| Gonzalez | $2654.61 | $3240.00 | $5894.61 |

The penalty figure is a combination of waiting time penalty, calculated at the employee's regular daily wage for a maximum of 30 days (CLC § 203), and the NSF check penalty of $1620 each (CLC § 203.1).[3]

Debtor did not object to Claimants' motions for administrative priority for regular postpetition wages, but did as to the penalty wages. The case was converted to chapter 7 and David K. Gottlieb ("Trustee") was appointed trustee before the bankruptcy court ruled. He objected to the allowance of the penalty wages as an administrative expense.

On 26 September 2002, the bankruptcy court entered a memorandum denying administrative priority, concluding:

The penalty wages imposed under [CLC] §§ 203 and 203.1 do not consti-

---

Code, 11 U.S.C. §§ 101–1330.

2. CLC § 203 provides:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee· who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days . . . .

CLC § 203.1 provides:

If an employer pays an employee in the regular course of employment or in accordance with Section 201, 201.5, 201.7, or 202 any wages or fringe benefits, or both, by check, draft or voucher, which check,

draft or voucher is subsequently refused payment because the employer or maker has no account with the bank, institution, or person on which the instrument is drawn, or has insufficient funds in the account upon which the instrument is drawn at the time of its presentation, so long as the same is presented within 30 days of receipt by the employee of the check, draft or voucher, those wages or fringe benefits, or both, shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced. However, those wages and fringe benefits shall not continue for more than 30 days . . . .

3. At oral argument, appellant's counsel indicated that there are approximately 35 similar claims in this case.

tute actual and necessary wages in preserving the estate under 11 U.S.C. § 503(b)(1)(A), and therefore do not qualify as an administrative expense subject to priority payment under 11 U.S.C. § 507(a)(1). Also, they do not constitute a priority wage claim under 11 U.S.C. § 507(a)(3)(A). At most, these penalty wages constitute a general unsecured claim, lacking any priority under Section 507.

Memorandum, 26 September 2002, page 4.

Claimants timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(B), and we do under 28 U.S.C. § 158(c).

## III. ISSUE

Whether the bankruptcy court abused its discretion in denying Claimants' motions for allowance of penalty wages as an administrative expense claim under § 503(b)(1)(A).

## IV. STANDARD OF REVIEW

We review the bankruptcy court's order allowing or disallowing an administrative claim for abuse of discretion. *Teamsters Indus. Sec. Fund v. World Sales, Inc. (In re World Sales, Inc.)*, 183 B.R. 872, 875 (9th Cir. BAP 1995). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

We review issues of statutory interpretation de novo. *Industrial Comm'n of Ariz. v. Solot (In re Sierra Pacific Broadcasters)*, 185 B.R. 575, 577 (9th Cir. BAP 1995).

## V. DISCUSSION

### A. *Administrative Priority*

Section 507(a)(1) accords administrative expenses of a bankruptcy estate first priority, and § 726(b) makes chapter 7 administrative expenses prior to those from chapter 11 in cases converted from chapter 11 to chapter 7. Section 503(b)(1)(A) allows for administrative expenses, "including ... the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ...." Administrative expenses

> must be the actual and necessary costs of preserving the estate for the benefit of its creditors. The terms "actual" and "necessary" are [to be] construed narrowly ....

*Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir.1988) (citations omitted).

To establish an administrative expense claim, a claimant must show that the debt:

> (a) arose from a transaction with the debtor in possession as opposed to the preceding entity...; and
>
> (b) directly and substantially benefitted the estate.

*Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir.1995).

The bankruptcy court denied Claimants' motions to allow the penalty wages as administrative claims under § 503(b)(1)(A), reasoning that the penalty wages did not represent compensation for actual services rendered, and thus were not ordinary or necessary costs benefitting or preserving the estate.

### 1. *Application of Palau*

The bankruptcy court relied on *National Labor Relations Bd. v. Walsh (In re Palau Corp.)*, 18 F.3d 746, 750 (9th Cir. 1994), reasoning that the penalty wages are not wages for the performance or furnishing of actual services, nor were they damages payable under § 503(b)(1)(A). In *Palau*, the debtor laid off an employee prepetition. Postpetition, the National Labor Relations Board (NLRB) obtained an administrative ruling that the layoff violated the National Labor Relations Act. The NLRB then filed an administrative claim for postpetition net back pay and benefits. The bankruptcy court denied the request to so classify the claim, and we affirmed, as did the Ninth Circuit. The Circuit adopted our rationale:

> [W]here the employee does not work during the postpetition period, there is no postpetition benefit to the estate and no postpetition conduct to justify the allowance of backpay as an administrative expense. Simply stated, taking money from the estate to pay back wages to an individual who did not work is detrimental, not beneficial to the estate.

*Palau*, 18 F.3d at 751 (quoting *National Labor Relations Bd. v. Walsh (In re Palau Corp.)*, 139 B.R. 942, 944 (9th Cir. BAP 1992)).

The bankruptcy court's reliance on *Palau* was misplaced. Although the claim there represented back pay and benefits relative to a postpetition period, the claim itself arose out the debtor's prepetition conduct. Accordingly, the claim did not arise "from a transaction with the debtor in possession as opposed to the preceding entity." Given that the claim failed the first prong of the *DAK* test, the *Palau* court's comments regarding benefit to the estate may be dicta. Even if they are not, the *Palau* analysis is inapplicable here,

where the claims arose out of the postpetition acts of Claimants and the debtor in possession.

### 2. *The Reading Exception*

In *Reading Co. v. Brown*, 391 U.S. 471, 483, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), the Supreme Court held that damages arising from negligent acts of a receiver were appropriately classified as administrative priority expenses, as costs ordinarily incident to the operation of the debtor's business. The Court concluded the statutory objective of fairness dictated the result, as the injured party "did not merely suffer injury at the hands of the business: it had an insolvent business thrust upon it by operation of law." *Id.* at 478, 88 S.Ct. 1759. With this decision, the Court broadened the interpretation of the term "actual and necessary" beyond typical operating costs: " '[A]ctual and necessary costs' should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible." *Reading*, 391 U.S. at 483, 88 S.Ct. 1759.

Although decided under the Bankruptcy Act, the *Reading* exception survived the enactment of the Code. *Texas Comptroller of Public Accounts v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.)*, 163 F.3d 1063, 1071 (9th Cir.1998).

The Trustee contends that the *Reading* exception does not apply, because the exception applies only to tort-like conduct, citing *Oregon Department of Human Resources v. Witcosky (In re Allen Care Centers, Inc.)*, 96 F.3d 1328, 1331 (9th Cir. 1996). In that case, the court held that costs incurred by a state trustee in closing down a nursing home were not entitled to administrative priority. The court summarily dismissed the argument that the costs fell within the *Reading* exception as ordinarily incident to the running of a

business: "[W]e have held that the rule of *Reading* applies only in cases involving 'postpetition tort-like conduct,' and the Department's expenses resulted, not from any postpetition wrongdoing, but simply from Allen Care's insolvency." 96 F.3d at 1331 (citing *Palau*, 18 F.3d at 751). *Allen Care* has little application here. The Ninth Circuit was not deciding in that case how to classify costs arising out of a debtor in possession's (or trustee's) violation of 28 U.S.C. § 959(b). As will be seen below, when squarely presented with that question, it concluded that the *Reading* exception applied.

### 3. *Duty to operate estate in accordance with state law*

█ A trustee or debtor in possession: [S]hall manage and operate the property in his possession according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b). The debtor in possession may be liable "with respect to any of [its] acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a).

In *Megafoods*, chapter 11 debtors failed to remit Texas state and local sales taxes collected prepetition which the debtors continued to hold postpetition, and became liable for interest on the delinquent taxes pursuant to Texas law. Citing *Reading*, the Ninth Circuit Court of Appeals held that the postpetition interest on the unremitted funds was entitled to administrative priority. 163 F.3d at 1072. The court found that the interest charges resulted from debtors' mismanagement of their estates, i.e., failure to comply with their duties under 28 U.S.C. §§ 959(b) and 960 (mandating compliance with state tax

laws), and that the *Reading* exception applied. Further, the court held that the *DAK* test was also satisfied: "[debtors'] refusal to pay [state and local sales taxes] also directly and substantially benefitted the estate by utilizing the funds as part of the bankruptcy estate." *Id.*

Other courts have held various expense costs "ordinarily incident to operation of a business," entitled to administrative priority, including postpetition sales taxes and statutory interest, *Al Copeland Enterprises, Inc. v. Texas (In re Al Copeland Enterprises, Inc.)*, 991 F.2d 233 (5th Cir.1993); and civil compensatory fines for violation of zoning laws and an injunction, *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200 (1st Cir.1985). *See also Kadjevich v. Decker (In re Kadjevich)*, 220 F.3d 1016, 1021 n. 4 (9th Cir.2000) (concerning the scope of *Charlesbank Laundry* ).

Similarly, the Eleventh Circuit found punitive civil penalties assessed for postpetition mining activities qualified for administrative priority, based on 28 U.S.C. § 959(b). *Alabama Surface Mining Comm'n v. N.P. Min. Co., Inc. (In re N.P. Min. Co., Inc.)*, 963 F.2d 1449, 1453 (11th Cir.1992). *See also Cumberland Farms, Inc. v. Florida Dept. of Environmental Protection*, 116 F.3d 16, 20 (1st Cir.1997) ("The payment of a fine for failing, during bankruptcy, to meet the requirements of Florida environmental protection laws is a cost 'ordinarily incident to operation of a business' . . . .").

In *Sierra Pacific*, an employee was injured postpetition in an industrial accident. Because the debtor in possession had no worker's compensation insurance, the Industrial Commission of Arizona paid benefits to the injured employee, and then asserted an administrative claim for the benefits paid. We reversed the bankruptcy court's ruling that the commission's

claim was not entitled to administrative priority under § 503(b)(1)(A), holding that the claim was a liability arising out of the chapter 11 trustee's administration of the estate. *See Sierra Pacific,* 185 B.R. at 578. We rejected the argument that *Reading* applies only where the trustee engages in tortious conduct:

> Clearly, the estate is liable for any actual and necessary costs of administration arising from postpetition claims of worker's compensation benefits arising from postpetition injuries. *See Reading,* 391 U.S. at 482, 88 S.Ct. 1759 (stating that it was natural and just that those injured by the operation of a business during arrangement recover ahead of those creditors for whose benefits the business is continued).

*Id.* at 579.

The Trustee contends that the penalty wages at issue are purely punitive, and that Claimants did not perform any services or render any benefit that would warrant administrative classification. But whether the penalty wages are punitive or compensatory is not dispositive. As in the tax, environmental penalty, and zoning cases cited above, the obligations here at issue, whether or not compensatory in some degree, arose out of Debtor's failure postpetition to comply with its obligations under state law.

We see no meaningful distinction between the worker's compensation premiums in *Sierra Pacific* and the penalty wages here.

**B. *Other Issues***

The Trustee also argues that, because Debtor has ceased operations, classifying the penalty wages as administrative expenses will unfairly punish remaining creditors of the estate. He points out that some courts have equitably subordinated penalty claims, citing *United States v. No-*

*land (In re First Truck Lines, Inc.),* 48 F.3d 210, 218 (6th Cir.1995), *rev'd on other grounds,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (punitive tax penalties); *Schultz Broadway Inn v. United States,* 912 F.2d 230, 234 (8th Cir.1990) (same). But there is no indication in the record that either the Debtor or the Trustee requested the claims be equitably subordinated under § 510(c), nor has anyone even suggested any wrongdoing on Claimants' part. *See Schulman v. State of California (In re Lazar),* 237 F.3d 967, 985–86 (9th Cir.2001). Accordingly, we express no opinion regarding that possibility.

Finally, because we conclude under 28 U.S.C. § 959(b) that the penalty wages at issue are entitled to administrative priority as a cost of doing business, we need not address Claimants' argument that the penalties are analogous to statutory severance pay imposed by the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101, and therefore entitled to treatment as priority wage claims under § 507(a)(3)(A).

## VI. CONCLUSION

We reject the Trustee's contentions, and conclude that the *Reading* exception applies: the penalty wages are administrative expenses entitled to priority under § 503(b)(1)(A). The bankruptcy court's contrary ruling was predicated on an erroneous view of the law, and thus an abuse of discretion. We REVERSE.