FILED

NOV 5 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HSIN-SHAWN CYNDI SHENG,<br>    Debtor. | BAP No. EC-19-1317-TLS<br><br>Bk. No. 2:17-bk-25114 |
| HSIN-SHAWN CYNDI SHENG,<br>    Appellant,<br>v.<br>ERIC J. NIMS, Chapter 7 Trustee; SARINA<br>M. PERALES,<br>    Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Ronald H. Sargis, Chief Bankruptcy Judge, Presiding

Before: TAYLOR, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Hsin-Shawn Cyndi Sheng appeals from the

bankruptcy court's order authorizing the refund of a tenant's security

deposit. While she alleges leasehold damage, her attorney neither timely

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

opposed the relevant motion nor provided evidence of such damage to the bankruptcy court. We AFFIRM.

## FACTS[2]

Ms. Sheng filed a chapter 13 case and scheduled approximately $2.7 million in assets, $1.6 million in secured claims, and $17,000 in unsecured claims. Her financial difficulties apparently arose from a lack of liquidity. Because her secured debt exceeded the § 109(e) maximum for a chapter 13 case, however, the case promptly converted to chapter 7.

The record reflects that Ms. Sheng found the post-conversion loss of asset control difficult. Despite conversion, she entered into an unauthorized lease of her Fremont, California residential rental property ("Property") and took possession of a $3,500 security deposit ("Security Deposit"). Because the Property had over $600,000 of scheduled non-exempt equity, the Trustee initially elected to sell it and obtained turnover orders. But subsequently, the Trustee and the tenant, Ms. Perales, reached an agreement; she remained in the Property and the Trustee collected approximately $32,000 in ongoing rental income. And then he changed course; he abandoned the Property and other estate assets to Ms. Sheng

---

[2] We note that Ms. Sheng failed to provide the Panel with a record sufficient to permit review of her claims of error. While we have the discretion to dismiss her appeal for this error, *see Jones v. City of Santa Monica*, 382 F3d 1052, 1057 (9th Cir. 2004), we will consider it to the extent we can take judicial notice of documents electronically filed in the underlying bankruptcy case to ascertain the relevant facts, *see Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

while retaining cash to pay all unsecured creditors and administrative claims.

Ms. Perales thereafter vacated the Property and requested a refund of her Security Deposit. Ms. Sheng refused the request and told her to obtain it from the Trustee.

So Ms. Perales sought a refund from the Trustee, who then filed a motion seeking to abandon $3,500 of estate property to her. He explained that after accounting for payment of all unsecured claims and approved administrative expenses, surplus funds approximating $6,400 remained in the estate. Thus, the estate could afford to pay Ms. Perales.

Ms. Sheng did not file a written opposition to the abandonment motion, but her counsel appeared at the hearing and stated her contention that she recently discovered damage to the Property and now wanted the Security Deposit retained. But he hedged on this assertion, also stating that he did not file a written opposition because he, at least initially, suspected that Ms. Sheng caused the damage. And he provided neither specifics nor proof of damage and further failed to request a continuance of the hearing to do so. His one point of law was a statement that abandonment to Ms. Perales would be improper because she did not have a possessory interest in the Security Deposit.

The bankruptcy court rejected these arguments and assertions and later entered its order granting the motion. Ms. Sheng timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Did the bankruptcy court abuse its discretion when it approved the Trustee's payment of $3,500 to Perales?

(2) Was the bankruptcy court biased against Ms. Sheng?

## STANDARD OF REVIEW

The bankruptcy court's decision to award or deny administrative expense claims is reviewed for abuse of discretion. *Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.)*, 294 B.R. 306, 309 (9th Cir. BAP 2003). The bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any basis supported by the record. *Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008).

## DISCUSSION

**A. The bankruptcy court did not err in approving the payment to Ms. Perales**.

While the Trustee packaged his request to pay Ms. Perales as an

4

abandonment, he acknowledged that Ms. Sheng had dissipated the Security Deposit. Thus, there was no asset to abandon, and, in substance, he requested authorization to pay Ms. Perales $3,500 as an administrative expense claimant under § 503(b)(1)(A). The bankruptcy court apparently understood the true nature of the relief requested; it confirmed that the Trustee sought payment of a postpetition claim from estate funds rather than a turnover of the actual Security Deposit.

A chapter 7 trustee generally administers property of the estate by liquidating the assets to cash and then distributing them to the estate's creditors. *See* § 704(a)(1). But a trustee may manage rental property for a time under § 721 and collect rents for the benefit of the estate. This is consistent with § 541(a)(6), which defines property of the estate to include certain: "[p]roceeds, product, offspring, **rents**, or profits of or from property of the estate . . . ." § 541(a)(6) (emphasis added).

Section 503(b)(1)(A) allows as administrative expenses "the actual, necessary costs and expenses of preserving the estate[.]" § 503(b)(1)(A). A claimant seeking administrative expense treatment must show that the debt asserted to be an administrative expense: (I) arose postpetition; (ii) arose from a transaction with the trustee (or, alternatively, that the claimant gave consideration to the trustee); and (iii) directly and substantially benefitted the estate. *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995).

There is no dispute that Ms. Perales paid the Security Deposit and rents under a postpetition rental agreement. True, Ms. Sheng improperly initiated the lease, but the Trustee eventually adopted it as binding on the estate. And the transaction was directly and substantially beneficial to the estate as the Trustee collected approximately $32,000.

Once the tenancy ended, Ms. Perales had a claim for her Security Deposit. Under California law, a residential landlord must hold a tenant's security deposit and, when a tenant vacates the premises, the landlord must return it or assert a claim against the tenant as compensation for, among other things, a tenant's rent default or to pay for damages caused by the tenant. *See* Cal. Civil Code §§ 1950.5(d), (e). A bad faith claim or retention by the landlord or the landlord's successor in interest of the security deposit may subject the landlord or the landlord's successor in interest to statutory damages of up to twice the amount of the security, in addition to actual damages. Cal. Civil Code § 1950.5(l).

Here, Ms. Sheng did not hold the Security Deposit, refused the requested refund, and directed Ms. Perales to seek it from the Trustee. Ms. Perales then provided declaratory evidence that she returned the Property in satisfactory condition. In the absence of any evidence of rent default or damage to the Property, the Trustee and the bankruptcy court appropriately assumed that the estate faced a damage claim if the Trustee refused the refund request. Thus, he appropriately sought bankruptcy

court authorization to pay the $3,500 administrative claim, and the record entirely supports affirmance.

While Ms. Sheng complains on appeal that she provided her counsel with evidence of Property damage, such evidence was never filed with the bankruptcy court, and her counsel never requested a continuance of the hearing to do so. Thus, Ms. Sheng waived her only opposition to the payment to Ms. Perales. *See* Rule 8009(b)(5); *Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014); *Syncom Capital Corp. v. Wade*, 924 F.2d 167, 169 (9th Cir. 1991). To the extent she takes issue with the adequacy of her counsel's representation, her dispute lies with him and not with the bankruptcy court.

## B. There is no evidence that the bankruptcy court was prejudiced.

Ms. Sheng also asserts that the bankruptcy court was prejudiced against her. The record does not support this assertion.

"Judicial impartiality is presumed." *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 987 (9th Cir. 2000). An individual claiming judicial bias must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). And where, as here, the allegation does not stem from an extrajudicial source, the party claiming bias must submit evidence that the judge exhibited "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 554-55

7

(1994). The test is as follows: "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 222 (9th Cir. BAP 1996) (citations and internal quotation marks omitted).

Ms. Sheng failed to meet her heavy burden. Her unsubstantiated assertion that the bankruptcy court was prejudiced against her "starting from day one" is legally insufficient.

## CONCLUSION

Based on the foregoing, we AFFIRM.