FILED

JUL 22 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.  SC-12-1496-JuBaPa |
| | ) | |
| 800IDEAS.COM, INC., | ) | Bk. No.  07-00207 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| RICHARD M. KIPPERMAN, Chapter | ) | |
| 7 Trustee, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| U.S.A.; UNITED STATES TRUSTEE; | ) | |
| 800IDEAS.COM, INC, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on May 15, 2013
at Pasadena, California

Filed - July 22, 2013

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable James W. Meyers, Bankruptcy Judge, Presiding

_____

Appearances:    Geraldine A. Valdez, Esq., Financial Law Group,
                argued for Appellant Richard M. Kipperman,
                Chapter 7 Trustee; Anne E. Nelson, Esq.,
                U.S. Department of Justice, argued for
                Appellee Internal Revenue Service.

_____

Before:  JURY, BASON* and PAPPAS, Bankruptcy Judges.

Opinion by Judge Jury
Concurrence by Judge Bason

_____

     * Hon. Neil W. Bason, United States Bankruptcy Judge for
the Central District of California, sitting by designation.

JURY, Bankruptcy Judge:

Richard M. Kipperman, chapter 7[1] trustee in the case of debtor 800Ideas.com, appeals the bankruptcy court's order allowing the claim of the Internal Revenue Service (IRS) with priority as an actual and necessary cost and expense of preserving the estate under § 503(b)(1)(A).[2]

IRS's claim arose postpetition when it assessed penalties against debtor under 26 U.S.C. (IRC) § 6699 due to trustee's failure to timely file debtor's corporate tax returns for the years 2008 and 2010. The bankruptcy court found that trustee had not proved reasonable cause for the late-filed returns within the meaning of IRC § 6699 and allowed IRS's claim as an administrative expense claim with first priority under § 503(b)(1)(A).

We agree with the bankruptcy court's decision that trustee failed to demonstrate reasonable cause for his delay in filing the tax returns and AFFIRM on this issue. However, in this case of first impression, we disagree with the court's decision that the penalties qualified as an administrative expense under § 503(b)(1)(A). The penalties did not "preserve the estate" as

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] The bankruptcy court referenced § 503(b) and not (b)(1)(A) in its ruling. However, implicitly the court was referring to § 503(b)(1)(A) because it found that the penalties were an administrative expense "as an actual and necessary cost of preserving the estate." Therefore, we refer to § 503(b)(1)(A) throughout our discussion.

required under the plain language of § 503(b)(1)(A) nor do they fall within the fundamental fairness doctrine espoused in Reading Co. v. Brown, 391 U.S. 471 (1968) and its progeny. Although we REVERSE the bankruptcy court's decision on the priority issue as it pertains to § 503(b)(1)(A), we REMAND this matter to the bankruptcy court to decide if the penalties qualify as an administrative expense for other reasons.

## I.   FACTS AND PROCEDURAL BACKGROUND

The facts are undisputed. On January 19, 2007, debtor, a California S corporation, filed its chapter 7 petition. Kipperman was appointed the chapter 7 trustee. Debtor's liabilities greatly exceeded its assets, with its main asset the potential right to an excise tax refund in an unknown amount for the 2006 tax year.

On March 12, 2007, trustee requested debtor's prepetition accountants, Schaim, Hyde & Company, Inc. (SHCI), to prepare the tax return for the 2006 tax year. SHCI began work on the return and Ms. Hyde, an accountant with the firm, advised trustee that the return would be completed by April 15, 2008. Over a year after the promised date for the return and two years after the initial request, in June 2009, trustee contacted Ms. Hyde to inquire about the status of the return. Ms. Hyde explained that there was a delay because debtor's files were inadvertently sent to storage. In July 2009, trustee again contacted Ms. Hyde regarding the return. She explained that work on the return had stopped due to the lack of payment; however she agreed to do the work. Thereafter, Ms. Hyde sent trustee an engagement letter.

On August 27, 2009, trustee requested the Financial Law

-3-

Group (FLG) to assist him in obtaining court approval for the employment of SHCI nunc pro tunc.

On January 15, 2010, SHCI completed the return. On January 19, 2010, trustee signed the return. On January 28, 2010, IRS received the return and thereafter notified trustee that it would disallow approximately $1,950.84 of the $38,197 claimed refund.

On March 3, 2010, trustee an application to have SHCI employed nunc pro tunc as of March 12, 2007. On the same date, trustee submitted the first and final fee application for SHCI.

On April 2, 2010, trustee filed an application to employ R. Dean Johnson as an accountant for the estate. The application stated that Johnson would, among other things, prepare the fiduciary income tax returns.

In mid-June 2011, the bankruptcy estate received the tax refund for the 2006 year from IRS in the amount of $36,150.33.

In mid-July 2011, Johnson completed debtor's tax returns for 2007, 2008, 2009 and 2010 and they were filed with IRS. The 2008 and 2010 returns, which are at issue in this appeal, stated that debtor had nine shareholders and reported a zero tax liability. After processing the returns, IRS assessed penalties against debtor under IRC § 6699 in the amounts of $9,612 and $8,775 for the 2008 and 2010 tax years, respectively. IRC § 6699 imposes penalties against an S corporation which fails to timely file its returns. Trustee sought to have the penalties abated to no avail.[3]

---

[3] Trustee sought abatement for the returns for 2008, 2009
(continued...)

-4-

On February 15, 2012, IRS filed a Request for Payment of Internal Revenue Taxes in the bankruptcy court. The request for payment in the amount of $18,667.17 was based on the 2008 and 2010 penalties assessed and was asserted as an administrative priority expense.

On February 23, 2010, trustee objected to the claim, contending that the penalties were not based on any unpaid tax incurred by the bankruptcy estate as required by § 503(b)(1)(C) and, therefore, trustee intended to treat the claim as a subordinated penalty claim under § 726(a)(4).

IRS responded, arguing that the penalties should be afforded administrative expense status under § 503(b)(1)(C) because they constituted a penalty relating to a tax of a kind specified in § 503(b)(1)(B). IRS also asserted that § 726(a)(4) was inapplicable to its postpetition claim because that statute applied to prepetition claims or those arising before the appointment of a trustee.

On April 16, 2012, trustee filed a reply declaration, stating that his failure to timely file the tax returns in question did not result from willful neglect and was due to reasonable cause. The asserted reasonable cause was the estate's insolvency during the tax years in question and trustee's belief that the estate would never be solvent. Trustee also argued again that the penalties and interest were

[3](...continued)
and 2010 on the same grounds. For some reason, IRS abated the penalties for the 2009 tax year, but not for 2008 and 2010. There is no adequate explanation in the record as to why this occurred.

-5-

not based on any unpaid tax incurred by the estate as required by § 503(b)(1)(C).

On June 8, 2012, the bankruptcy court heard the matter. At the hearing, IRS contended for the first time that the penalties were entitled to administrative expense priority under § 503(b)(1)(A) as an actual and necessary cost and expense of preserving the estate, citing to Reading, 391 U.S. 471, the Ninth Circuit's decision in Tex. Comptroller of Pub. Accounts v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.), 163 F.3d 1063, 1067 (9th Cir. 1998), which adopted the Reading rationale, and this Panel's decision in Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.), 294 B.R. 306, 309 (9th Cir. BAP 2003). According to IRS, the rationale of these cases applied under the facts of this case because trustee had an obligation to comply with the Tax Code by filing timely returns and he did not. In addition, IRS argued that even though an estate may be insolvent, trustee still had an obligation to file a tax return and thus the estate's insolvency did not constitute reasonable cause to excuse the penalty. Due to IRS's new arguments and citations, the bankruptcy court continued the matter to July 20, 2012, and authorized the parties to file further pleadings.

On June 22, 2012, IRS submitted an amended response and declaration with attached exhibits showing IRS account transcripts for the 2008 and 2010 tax years.

On June 29, 2012, trustee submitted an amended response, arguing that the fundamental fairness doctrine espoused in Reading was inapplicable to a chapter 7 case when there was no operating business. Trustee further maintained that

-6-

administrative priority under § 503(b)(1)(A) was not appropriate when the tax penalties were purely punitive. Finally, trustee again asserted that the estate's insolvency gave him reasonable cause not to timely file the tax returns.

The bankruptcy court issued a tentative ruling on July 19, 2012, requesting (1) an explanation from IRS regarding the calculation of the penalties; and (2) a declaration by trustee, providing further information on the filing of the 2006 tax return for the refund. The court continued the hearing on the claim objection until August 24, 2012.

On August 2, 2012, IRS filed a supplemental declaration addressing the calculation of the penalties.

On August 8, 2012, trustee filed his supplemental declaration setting forth in detail his communications with SHCI regarding its preparation of the 2006 tax returns. The declaration set forth the facts noted above regarding trustee's communications with Ms. Hyde, the eventual employment of her firm, and the receipt of the refund. On the same date, trustee submitted the declaration of Johnson. Johnson declared that he and trustee "concurred" that tax compliance work, except for the 2006 prepetition return prepared by SHCI, should wait until it became more certain that the tax refund would be received. Johnson also provided his opinion as to why § 503(b)(1)(A) was not applicable under the circumstances of the case.[4]

_____

[4] In this regard, Johnson stated that it was difficult for him to believe that a "penalty for the late filing of a 'zero' S corporation income tax return is a 'necessary cost' of preserving the estate." The admissibility of this legal opinion made by an
(continued...)

On August 30, 2012, the bankruptcy court issued a tentative ruling[5] allowing IRS's claim as an administrative expense claim under § 503(b)(1)(A), as an actual and necessary cost of preserving the estate, and finding that trustee had no reasonable cause to delay the filing of the returns at issue while waiting for the excise tax refund. The court noted that further argument would not be helpful and took the hearing off calendar.

On September 18, 2012, the bankruptcy court entered the order allowing IRS's claim as an administrative claim under § 503(b)(1)(A).

On September 25, 2012, trustee filed a timely notice of appeal from the order.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Did the bankruptcy court err in finding that trustee failed to prove reasonable cause for his failure to timely file the S corporation tax returns?

B. Did the bankruptcy court err in allowing IRS's claim as an administrative expense claim under § 503(b)(1)(A)?

---

[4](...continued)
accountant is questionable but there is no indication in the record that the bankruptcy judge gave it any weight.

[5] Nothing in the record reflects an act to make this tentative ruling a final one. However, because the entered order is consistent with it, we construe it to be a final ruling.

## IV.  STANDARDS OF REVIEW

We review de novo the question of what elements constitute reasonable cause for the late filing of tax returns under IRC § 6699.  See United States v. Boyle, 469 U.S. 241, 249 n.8 (1985) (considering reasonable cause under IRC § 6651).[6] Whether those elements are present in a given case is a question of fact reviewed for clear error.  Id.; see also Knappe v. United States, 713 F.3d 1164, 1169(9th Cir. 2013).

The bankruptcy court's order allowing an administrative claim is generally reviewed under the abuse of discretion standard.  In re Metro Fulfillment, Inc., 294 B.R. at 309. However, where the facts are undisputed, the issue is purely one of law subject to de novo review.  See Elliott v. Four Seasons Props. (In re Frontier Props.), 979 F.2d 1358, 1362 (9th Cir. 1992).

## V.  DISCUSSION

An S corporation is an entity which elects to be taxed as a partnership with income passed through to the shareholders on a pro rata basis.  Ding v. Comm'r, 200 F.3d 587, 589 (9th Cir. 1999); IRC §§ 1363(a), 1366(a), 1371(a)(1).  Although S corporations generally do not pay federal taxes at the corporate level, they still must file an annual tax return.  See IRC § 6037  ("Every S corporation shall make a return for each taxable year . . . .");  see also Ensyc Techs. v. Comm'r, 2012 WL 2160435, at *3 (T.C. 2012).

A chapter 7 trustee's duty to file a chapter 7 corporate

---

[6]  IRC § 6651 imposes a penalty against an individual taxpayer for failure to file a tax return or pay taxes.

debtor's tax return is subject to little debate.  IRC § 6012(b)(4) provides that "[r]eturns of an estate . . . under chapter 7 . . . of title 11 of the United States Code <u>shall be made</u> by the fiduciary thereof." (Emphasis added).  When a corporation files for bankruptcy relief and a trustee is appointed, the trustee's duty to file tax returns is governed by IRC § 6012(b)(3), which states:

> In a case where a receiver, trustee in a case under Title 11 of the United States Code, or assignee, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, whether or not such property or business is being operated, such . . . , trustee, . . . shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns.

The trustee of a corporate debtor is required to file returns, regardless of whether the trustee is an "operating trustee" or a "liquidating trustee." <u>Holywell Corp. v. Smith</u>, 503 U.S. 47, 53-54 (1992).[7]

When a corporation has no assets or income, a trustee may make a request to IRS to be relieved of the reporting obligation

---

[7] In contrast, a trustee's obligation to file a tax return in an individual's chapter 7 case is different.  Under IRC § 6012(d)(8), ". . . every estate of an individual under Chapter 7 . . ., the gross income of which for the taxable year is not less than the sum of the exemption amount plus the basic standard deduction under [26 U.S.C.] § 63(c)(2)(D)," must file a tax return on behalf of the bankruptcy estate.  Accordingly, a chapter 7 trustee has a general obligation to file tax returns on behalf of the bankruptcy estate if it "realizes the threshold amount of gross income required to trigger the filing of a return." <u>In re Pflug</u>, 146 B.R. 687, 689 (Bankr. E.D. Va.1992).

-10-

by following a simple procedure. <u>See</u> Rev. Rul. 84-123,[8] 1984-2 C.B. 244; <u>see also</u> 13 <u>Mertens Law of Fed. Income Taxation</u> § 47.75 (the obligation of a trustee or receiver to file tax returns may not apply if the corporation, although not formally dissolved, has ceased operations and has no assets or income; however, a liquidating corporation is deemed to continue as long as its affairs are being settled and its assets are not actually

---

[8] Rev. Proc. 84-59 (1984) at § 3 sets forth the procedure for making such a request.

.01 The trustee, receiver, or assignee must file a request with the district director for the district in which the corporation has its principal place of business.

.02 The request should state:

1 The name, address and employer identification number of the corporation, and

2 The date on which the trustee, receiver, or assignee filed the notice of appointment to act, as required under section 301.6036-1(a) of the Regulations on Procedure and Administration.

.03 As stated in Rev.Rul. 84-123, the request should set forth the facts, with supporting documents if necessary, as to why the relief from the filing requirements is needed.

.04 The request should contain the following statement signed by the trustee, receiver, or assignee:

I hereby request relief from filing federal income tax returns for tax year(s) ending -- for the above named corporation and declare under penalties of perjury that to the best of my knowledge and belief the information contained herein is correct.

.05 The district director will inform the trustee, receiver, or assignee within 90 days of receipt whether the request is granted or denied.

distributed).  Trustee did not make such a request here.[9]

**A.     Reasonable Cause Under IRC § 6699**

Nonetheless, trustee argues that his failure to timely file the S corporation returns should be excused because he had reasonable cause.[10]  IRC § 6699 was added to the Tax Code in 2007 as part of the Mortgage Forgiveness Debt Relief Act of 2007, Pub.L. No. 110-142, sec. 9(a), 121 Stat. at 1807.  <u>Ensyc Techs.</u>, 2012 WL 2160435, at *3.  The statute provides in relevant part:

> (a) General rule.--In addition to the penalty imposed by section 7203 (relating to willful failure to file return, supply information, or pay tax), if any S corporation required to file a return under section 6037 for any taxable year--
>
> (1) fails to file such return at the time prescribed therefor (determined with regard to any extension of time for filing), or
>
> (2) files a return which fails to show the information required under section 6037, such S corporation shall be liable for a penalty determined under subsection (b) for each month (or fraction thereof) during which such failure continues (but not to exceed 12 months), <u>unless it is shown that such failure is due to reasonable cause</u>.  (Emphasis added).
>
> . . . .

---

[9]  During oral argument before us, we learned that trustee could have also filed a form to request an extension of time to file the informational returns.  Such a request would have given trustee an additional six months to file the returns.  The 2006 tax refund was received in mid-June 2011 and the returns for 2008 and 2010 were filed in mid-July 2011.  Therefore, the six month extension would have been inadequate.

[10]  On this point, trustee apparently does not seek disallowance of the penalties but instead contests their priority:  he seeks allowance either on a par with general unsecured claims or subordinated to them.  "Mr. Kipperman hasn't asked for the claim to be disallowed. He's just requesting that it be subordinated on equitable grounds because there's no pecuniary loss to the IRS."  Trustee's claim objection however never requested equitable subordination nor do the pleadings address whether subordination is appropriate under § 510(c).

-12-

In Ensyc Techs., 2012 WL 2160435, at *3, the tax court considered the scope of "reasonable cause" under IRC § 6699. There, the president of the S corporation challenged the IRS's assessment of a late-filing penalty, contending that he timely mailed a Form 1120S for the corporation. After finding that the president had not timely filed Form 1120S, the tax court considered whether there was reasonable cause for not filing the form on time. As a matter of first impression, the tax court held that the failure of an S corporation to timely file its annual return is due to reasonable cause if the S corporation exercised ordinary business care and prudence and was nevertheless unable to timely file its return. Id. at *3.

In reaching this conclusion, the court used the ordinary business care and prudence test which applied to IRC § 6651. Treas. Reg. § 301.6651-1(c)(1)[11] states: "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." Ensyc Techs., 2012 WL 2160435, at *3. In the end, the tax court found

_____

[11] This section provides in relevant part:

(c) Showing of reasonable cause. (1) Except as provided in subparagraphs (3) and (4) of this paragraph (b), a taxpayer who wishes to avoid the addition to the tax for failure to file a tax return or pay tax must make an affirmative showing of all facts alleged as a reasonable cause for his failure to file such return or pay such tax on time in the form of a written statement containing a declaration that it is made under penalties of perjury. . . . If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. . . .

the president's testimony credible and corroborated by the documentary evidence with respect to the late filing. Accordingly, the court concluded there was reasonable cause for the delay and thus the penalties were excused. Id.

Although Ensyc Techs. is the only case to consider the scope of reasonable cause under IRC § 6699, case law which has construed the term in the context of IRC § 6651 is persuasive. The IRS has articulated eight reasons for a late filing that it considers to constitute reasonable cause under IRC § 6651. "These reasons include unavoidable postal delays, the taxpayer's timely filing of a return with the wrong IRS office, the taxpayer's reliance on the erroneous advice of an IRS officer or employee, the death or serious illness of the taxpayer or a member of his immediate family, the taxpayer's unavoidable absence, destruction by casualty of the taxpayer's records or place of business, failure of IRS to furnish the taxpayer with the necessary forms in a timely fashion, and the inability of an IRS representative to meet with the taxpayer when the taxpayer makes a timely visit to an IRS office in an attempt to secure information or aid in the preparation of a return." United States v. Boyle, 469 U.S. at 243 n.1. These examples generally illustrate factors beyond a taxpayer's control. Id. at 249 n.6.

Furthermore, ordinary business care and prudence is only one element of the "reasonable cause" necessary to excuse penalty assessments for the untimely filing of tax returns. Valen Mfg. Co. v. United States, 90 F.3d 1190, 1191 (6th Cir. 1996). In order to qualify for such relief, trustee must also have satisfied that portion of Treas. Reg. § 301.6651-1(c)(1)

-14-

which requires a taxpayer to show that it has been rendered unable to meet its responsibilities despite the exercise of such care and prudence. Id. at 1192. Accordingly, to establish reasonable cause, trustee had the burden of proving that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time.

Here, although the bankruptcy court did not mention the ordinary business care and prudence test, the record supports the court's conclusion that trustee failed to prove reasonable cause. Trustee declared that the late filing was based on his mistaken belief that the insolvency of the estate automatically relieved him of filing returns. However, as noted above, a trustee is not automatically exempted from filing tax returns when a corporation is insolvent. Rather, IRS has adopted a procedure which may relieve a trustee of the burden of filing such returns when a corporate debtor is insolvent, but trustee did not pursue this relief.[12]

Further, trustee points to no factors that were beyond his control with respect to the late-filed 2008 and 2010 tax returns. Indeed, in its July 19, 2012 tentative ruling, the bankruptcy court opined that had trustee timely filed the 2006 tax return for the refund, it followed that the refund would

[12] At oral argument, IRS's attorney suggested that trustee could complete and file the informational returns without the help of a professional when the estate is insolvent. IRS has not established this is a viable option for a trustee. Rather, the better solution is for the trustee to seek relief from the burden of filing the returns or, if appropriate, seek an extension of time.

have been obtained in 2007, the estate distributed and the tax returns for 2008, 2009 and 2010 would have been unnecessary. Our review of trustee's supplemental declaration shows that the bankruptcy court could reasonably infer from the undisputed facts that the delay surrounding the filing of 2006 tax return was not caused by events beyond trustee's control. <u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 564, 575 (1985) (Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.).

In sum, trustee's lack of diligence in supervising his accountants, coupled with his deliberate decision to delay filing the returns until he was convinced this would be an "asset case," provided an ample basis for the bankruptcy court to reject trustee's reasonable cause argument and to sustain IRS's decision to assess the penalties.

**B.    Administrative Expense Priority Under § 503(b)(1)(A)**

We now turn to the thornier priority question. Section 507(a)(2) accords administrative expenses of a bankruptcy estate second priority. Section 503(b)(1)(A) states that administrative expenses include "the actual, necessary costs and expenses of preserving the estate including . . ." and then lists specific categories. Under § 102(3) "includes" and "including" are not limiting. Therefore, the use of "including" in the preamble of § 503(b)(1)(A) means that actual and necessary costs and expenses of preserving the estate may include types of claims other than those listed under § 503(b)(1)(A) which may be given administrative priority.

Traditionally, to be deemed an administrative expense under

-16-

the "actual and necessary" rubric in § 503(b)(1)(A), two requirements must be met under Ninth Circuit case law requirements:[13] the claim must have arisen from a transaction with the debtor in possession and must directly and substantially benefit the estate.  <u>Abercrombie v. Hayden Corp. (In re Abercrombie)</u>, 139 F.3d 755, 757 (9th Cir. 1998) (quoting <u>Microsoft Corp. v. DAK Indus. (In re DAK Indus.)</u>, 66 F.3d 1091, 1094 (9th Cir. 1995).  Years ago, the Ninth Circuit addressed the parameters of § 503(b)(1)(A) in <u>Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)</u>, 853 F.2d 700 (9th Cir. 1988), which established the following guidelines:

> First, the statute is to be narrowly construed. Second, [a]n actual [not potential] benefit must accrue to an estate.  In either a Chapter 11 liquidation or a Chapter 7 the court should be more concerned with maximizing the size of the estate for the creditors than with inducing third parties to contribute towards the continued operations of the business.  Third, the court should consider allowing a claim under § 503(b)(1)(A) for costs incurred if the expense results in a preservation of estate assets for the benefit of creditors.  Finally, courts are not free to establish their own priorities of payment within the Bankruptcy Code.

<u>In re Allen Care Ctrs., Inc.</u> 163 B.R. 180, 185 (Bankr. D. Or. 1994) (citing <u>In re Dant & Russel, Inc.</u>), <u>aff'd</u> 175 B.R. 397 (D. Or. 1994), <u>aff'd</u> 96 F.3d 1328 (9th Cir. 1996).

When we apply these guidelines to the facts of this case, IRS's claim based on penalties does not qualify as an administrative expense.  This case is a chapter 7 case where the primary goal is to keep costs to a minimum to preserve the limited assets.  The penalties were not incurred in the

---

[13]  There is no dispute that IRS's claim for the penalties arose postpetition.

-17-

operation of a business and, as a result, the penalties were incurred neither to benefit the estate nor preserve it. Under these facts, affording administrative expense priority to IRS's claim would be to the detriment of the unsecured creditors.

The Supreme Court carved out an exception to the "actual and necessary" requirements in Reading by holding that "[i]n the interests of 'fairness to all persons having claims against the insolvent' . . . tort claims arising post-petition [are] 'actual and necessary expenses' of preserving the estate." Boeing N. Am., Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018, 1025 n. 10 (9th Cir. 2005) (quoting Reading, 391 U.S. at 477); In re Megafoods Stores, Inc., 163 F.3d at 1071 (Reading survived the enactment of the Bankruptcy Code); see also In re Metro Fulfillment, Inc., 294 B.R. at 310.

In Reading, the debtor corporation filed a petition for arrangement under chapter XI of the Bankruptcy Act. The same day, a receiver was appointed and authorized to conduct the debtor's business, which consisted principally of leasing the debtor's only asset, an eight story industrial structure. Not long after the receiver was appointed, the debtor's building was destroyed by a fire which spread to adjoining premises and damaged real and personal property of Reading Company and others. Reading filed a claim for over $550,000 as an administrative expense in the arrangement, based on the asserted negligence of the receiver. After the debtor was voluntarily adjudicated a bankrupt and the receiver elected the trustee in bankruptcy, the claims of Reading and others became claims for administration expenses in bankruptcy with first priority under

§ 64(a)(1)[14] of the Bankruptcy Act. The trustee disallowed the claim for administration expenses. On appeal, the district court and appellate court held that administrative treatment was not warranted. The Supreme Court disagreed, holding that damages resulting from negligence of a receiver acting within the scope of his authority as receiver give rise to "actual and necessary costs" of a Chapter XI arrangement.

The Supreme Court essentially engaged in a two-step analysis to reach its conclusion. The Court first addressed whether the trustee breached some legal duty that gave rise to a corresponding right to payment under state law. Because Reading suffered the financial injury from the negligence of the trustee and a workman, the Court noted that Reading would have a right to recover under the common law rule of respondeat superior. Therefore, in principle, the Court found that Reading had a "right to recover for that injury from their 'employer,' the business under arrangement." Id. at 477. Liability was thus established.

In a footnote, the Court pointed out that 28 U.S.C.

---

[14] Section 64(a)(1) and § 503(b)(1)(A) contain similar language. Section 64(a)(1) of the Bankruptcy Act provides in part:

The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition. . . . (emphasis added).

-19-

§ 959(b)[15] requires a trustee to manage and operate the business in accordance with local state law, in the same manner that the owner would be bound to do.  Implicitly, the trustee in Reading did not comply with state law when he failed to exercise the duty of reasonable care in operating the business.  The Court therefore considered the policy embedded in 28 U.S.C. § 959(b) of ensuring a trustee's compliance with state law when the trustee is authorized under bankruptcy law to operate the debtor's business.  However, the Court observed that "[t]his provision of course establishes only the principle of liability under state tort and agency law, and does not decide from whom or with what priority tort claims may be collected."  Id. at 478 n.7.

Next, the Court addressed the priority issue.  The Court first considered the statutory objective of "fairness to all persons having claims against an insolvent."  The Court then balanced the objective of the debtor's rehabilitation against the desirability of allowing those injured by the operation of the business during the bankruptcy process to recover ahead of those for whose benefit the business was carried out.

---

[15]  This section provides:

[A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

-20-

> At the moment when an arrangement is sought, the debtor is insolvent. Its existing creditors hope that by partial or complete postponement of their claims they will, through successful rehabilitation, eventually recover from the debtor either in full or in larger proportion than they would in immediate bankruptcy. Hence the present petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law. That business will, in any event, be unable to pay its fire debts in full. But the question is whether the fire claimants should be subordinated to, should share equally with, or should collect ahead of those creditors for whose benefit the continued operation of the business (which unfortunately led to a fire instead of the hoped-for rehabilitation) was allowed.

Id. at 478. The Court concluded on balance that tort claims arising during a Chapter XI proceeding were "costs ordinarily incident to operation of a business," and therefore qualified as administrative expenses entitled to priority under § 503(b). Id. at 483-84. In sum, the Court's priority decision was largely based on equitable principles and a fairness rationale.

On appeal, trustee argues that Reading is not applicable under the facts of this case because (1) the penalties were punitive and (2) the penalties could not be considered "costs ordinarily incident to the operation of a business" as required by the language in Reading because the trustee was not operating the business. While IRS acknowledges that most cases have applied Reading in the context of a chapter 11 where the debtor-in-possession or trustee was operating the debtor's business, IRS argues that policy considerations favor an extension of Reading under the facts of this case. Those policies include the United States' interest in maintaining a workable tax system, which the IRS contends should outweigh any cost to debtor's other creditors, and discouraging trustees from

-21-

shirking their duty to timely file bankruptcy estate tax returns.

We initially note that the holding in Reading is a narrow one. In re Abercrombie, 139 F.3d at 758 ("Reading created a venerable but limited exception" to the traditional requirements for administrative priority). The Ninth Circuit first suggested that the rule of Reading applies only in cases involving "'postpetition tort-like conduct,'. . . ." Or. v. Witcosky (In re Allen Care Ctrs., Inc.), 96 F.3d 1328, 1331 (9th Cir. 1996) (citing Nat'l Labor Relations Bd. v. Walsh (In re Palau Corp.), 18 F.3d 746, 751 (9th Cir. 1994)); see also In re Lazar, 207 B.R. 668, 683–84 (Bankr. C.D. Cal. 1997).

However, in another line of cases, the Ninth Circuit and this Panel expanded the Reading doctrine beyond tort-like conduct when the "costs" at issue arose out of the debtor-in-possession's (or trustee's) violation of 28 U.S.C. § 959(b) while operating a business. See In Megafoods Stores, Inc., 163 F.3d at 1072 (holding postpetition interest on unremitted state and local sales taxes collected prepetition were entitled to administrative priority when interest charges resulted from debtors' mismanagement of their estates, i.e., failure to comply with their duties under 28 U.S.C. §§ 959(b) and 960 (mandating compliance with state tax laws), and that the Reading exception applied); In re Metro Fulfillment, Inc., 294 B.R. at 311-12 (holding claims filed by employees who were employed in the debtor's packing and shipping department at minimum wage and were never paid in violation of California Labor Code §§ 203 and 203.1 were administrative claims within Reading's rationale when

-22-

the debtor was operating the business and failed to comply with state law under 28 U.S.C. § 959(b))[16]; see also Ala. Surface Mining Comm'n v. N.P. Mining Co., Inc. (In re N.P. Mining Co., Inc.), 963 F.2d 1449 (11th Cir. 1992) (punitive civil penalties assessed for postpetition mining activities qualified for administrative priority).

While none of these cases addressed the category of expenses involved here,[17] we are persuaded that IRS's penalty claim is not the type of claim covered by Reading under either line of reasoning. IRS's penalty claim did not arise from trustee's postpetition tortious or active wrongdoing. These terms imply some wrongful conduct and, here, the bankruptcy court did not find that trustee had engaged in any wrongful conduct.[18] Indeed, the record shows that trustee was under the mistaken belief that he did not need to file the informational

---

[16] Furthermore, the Panel in Metro Fulfillment, Inc. made clear that whether the penalty wages at issue were punitive or compensatory was not dispositive because the debtor failed to comply with its postpetition obligations under state law. 494 B.R. at 312. For this reason, trustee's arguments regarding the punitive nature of the penalties are not persuasive.

[17] We have not found any case that has extended the fundamental fairness doctrine to penalties assessed for failure to timely file tax returns nor have the parties cited a case that tangentially touches upon this issue. Therefore, we do not find the out-of-jurisdiction cases that are cited by the parties helpful to our analysis.

[18] This type of conduct is similar to the "willful neglect" standard under IRC § 6651. The term "willful neglect" means "a conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245.

-23-

returns while the estate remained insolvent.

Any focus on 28 U.S.C. § 959(b) in this context is misplaced because the statute "establishes only the principle of liability under state tort and agency law, and does not decide from whom or with what priority tort claims may be collected." Reading, 391 U.S. at 475. It is doubtful 28 U.S.C. § 959(b) applied to trustee when he was not operating the business. See In re N.P. Mining Co., 963 F.2d at 1460 (citing cases that hold that 28 U.S.C. § 959(b) is inapplicable to liquidation cases). Moreover, 28 U.S.C. § 959(b) requires an operating trustee to comply with state law versus trustee's noncompliance with the federal tax code in this case. Accordingly, for purposes of establishing "only the principle of liability," we conclude that the Tax Code is up to the task by requiring trustee to file corporate tax returns during the case, whether or not the business is being operated. See IRC § 6012(b)(3) and (4).

The bankruptcy estate's "liability" is only one part of the analysis under Reading. Another requirement for administrative expense status is that the cost must be one "ordinarily incident to operation of a business." The Reading Court concluded that "the words 'preserving the estate' [in § 64(a) of the Bankruptcy Act] include the larger objective, common to arrangements, of operating the debtor's business with a view to rehabilitating it." 391 U.S. at 476-77. Applying Reading in the context of an operating business is not only consistent with the words "preserving the estate" under § 503(b)(1)(A), but it is also consistent with the underlying rationale for the fundamental fairness doctrine espoused in the case. Priority for the fire

-24-

claimants over the unsecured creditors was based upon the quid pro quo for the continued operation of the business.

We thus conclude that Reading does not apply for the same reasons that the plain language of § 503(b)(1)(A) is inapplicable. Trustee was not operating the business of debtor under the common meaning of the term. Treating IRS's claim as an administrative expense in this case will allow that claim to be paid to the exclusion of, and out of the resources otherwise available for, claims of other creditors. The practical result would be that the penalties would be paid by innocent third persons, the creditors, who did not derive any benefit from the continued operation of any business. Under the reasoning in Reading, that result does not seem fair especially in light of the fact that as a general matter, § 503(b)(1)(A) is construed narrowly in order to maximize and protect the limited assets of the bankruptcy estate for the benefit of unsecured creditors. See In re Palau Corp., 139 B.R. at 942, 944 (9th Cir. BAP 1992), aff'd, 18 F.3d 746 (9th Cir. 1994); In re Dant & Russell, Inc., 853 F.2d 700 (9th Cir. 1988). Because an unsecured creditor in a chapter 7 liquidation case cannot expect to improve its position through the operation of a business, a narrow construction of § 503(b)(1)(A) weighs heavily under these circumstances.

Although we do not condone trustee's apparent lack of diligence in completing the 2006 tax returns so that the refund for that year would have been received by the estate in a more timely manner, we also do not believe that Ninth Circuit case law allows us to expand the Reading exception to all

-25-

postpetition costs and find they are entitled to administrative expense priority simply because the chapter 7 trustee had a "duty" to comply with the Tax Code despite an insolvent estate. We are reluctant to read the "preservation of the estate" language out of § 503(b)(1)(A) and establish a per se rule for postpetition penalties such as this. Such an interpretation of Reading would swallow the guidelines set forth in Dant & Russell making all postpetition claims eligible for administrative priority as a "cost of administration."

We do acknowledge, however, that priority status for the tax penalties under § 503(b)(1)(A) is a close call. IRS makes a very nearly persuasive case that, in the interest of fairness to taxpayers everywhere, and to promote the pubic policy embodied in the Tax Code that requires bankruptcy trustees to timely file all tax returns due during the course of administration of a bankruptcy estate, the penalties here constitute "actual, necessary costs of preserving the estate" under § 503(b)(1)(A) as that phrase has been interpreted in the case law. As noted, it is not dispositive that the tax penalties in this case conferred no direct benefit on the bankruptcy estate; a legion of courts, from the Supreme Court in Reading on down, have carved out judicial exceptions to that strict requirement over the years to apply § 503(b)(1)(A) fairly, consistent with public policy.[19] Unfortunately for IRS, though, none of the decisions recognizing Reading fairness exceptions deal with a non-

---

[19] Indeed, if a direct benefit to the estate were required for § 503(b)(1)(A) status, it would be difficult for trustee to justify payment of the fees for the accountants he retained to prepare and file the tardy tax returns.

-26-

operating chapter 7 estate. Instead, the fairness exception has nearly always applied when debtors and trustees were operating a business, in many cases to abide by 28 U.S.C. § 959(b)'s command that they follow the same state rules as others. The absence of any authority applying the Reading exception in a liquidation scenario is sufficient to tip the scales in trustee's favor.

**C. Administrative Expense Priority For Other Reasons**

Nevertheless, the tax penalties may be entitled to administrative expense status for other reasons. First, § 503(b) states that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including —. . . ." (Emphasis added). By using the word "including" in the introduction to § 503(b), Congress makes clear that, to be allowed, the tax penalties need only constitute "administrative expenses"; it is not necessary that the tax penalties precisely match one of the illustrative categories listed in subsections (1) through (9).

Because there is no definition of "administrative expense" in the Bankruptcy Code, presumably, Congress intended that the bankruptcy courts fashion a definition for this term based upon the facts of the case guided by the general policies of the Code. As a result, if the bankruptcy court here were to find that, even though they did not constitute a cost of preserving the bankruptcy estate, the tax penalties were nonetheless expenses incurred in the administration of this bankruptcy estate (i.e., "administrative expenses"), IRS's claim may still be entitled to administrative priority under § 503(b). The

-27-

bankruptcy court should have the opportunity on remand to make that decision.

Secondly, IRS initially argued to the bankruptcy court that the penalties should be deemed administrative expenses under § 503(b)(1)(C) as a "penalty . . . relating to a tax of a kind specified in subparagraph (B) of [§ 503(b)]." Trustee argued in response that the penalty did not relate to "a tax of a kind specified in subparagraph (B)" because no tax was actually imposed under subparagraph (B). The bankruptcy court did not address this issue because it made its decision under subparagraph "(A)." For this reason, remand is appropriate so that the bankruptcy court can evaluate the issues under § 503(b)(1)(B) and (C).

Finally, a remand is mandated to address the question that begs to be answered: if these tax penalties, incurred in the ordinary course of the trustee's administration of the bankruptcy estate are not allowed administrative expenses, then what are they? Presumably, the penalties may not be allowed as unsecured claims because they did not arise prior to the petition date. See §§ 501(a)and 502(a) (in tandem, providing that a creditor may file a claim, and in general, such claims are allowed based upon "the amount [due] . . . as of the date of the filing of the petition"); § 101(5),(10) (in tandem, providing that a "claim" is a right to payment, and a creditor is an entity that "has a claim against the debtor that arose at the time of or before" the commencement of a voluntary chapter 7 case). While the Code expressly treats some post-bankruptcy claims as though they arose before the filing of the petition,

-28-

tax penalties of the sort IRS claims here are not.  See e.g.,
§ 502(f) (certain claims in involuntary cases); § 502(g) (claims
for post-petition lease rejection damages); § 502(h) (claims for
avoided transfers); § 502(i) (claims for certain priority
taxes).

In sum, although we hold that the tax penalties are not
entitled to administrative expense status under § 503(b)(1)(A)
as "costs of preserving the estate", we remand this matter to
the bankruptcy court to decide if the penalties qualify as
administrative expenses for other reasons.

## VI.  CONCLUSION

We conclude that the bankruptcy court properly found
trustee failed to prove reasonable cause for his failure to
timely file the 2008 and 2010 tax returns at issue in this
appeal and AFFIRM on this issue.  However, we REVERSE on the
priority issue under § 503(b)(1)(A) for the reasons discussed
above and REMAND this matter to the bankruptcy court to decide
if the penalties qualify as administrative expenses for other
reasons.

Concurrence begins on next page.

BASON, Bankruptcy Judge, concurring:

As a matter of nonbankruptcy law I agree with the majority's interpretation of "reasonable cause" for not timely filing a tax return. The trustee had the burden to prove that the estate exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time.

As a matter of bankruptcy law I agree with the majority that tax penalties are not "costs of preserving the estate" under § 503(b)(1)(A). I also agree that this matter should be remanded to the bankruptcy court for two reasons: first, to decide if the penalties qualify as administrative expenses for any other reasons and, second, to decide how to deal with the penalties if they are not administrative expenses.

I write separately to emphasize the narrowness of the panel's ruling. Many of the justifications presented by the trustee are, in concept, reasonable cause for not timely filing tax returns, regardless of whether the evidence in this particular case is compelling. In addition, there are numerous issues that we are not deciding today.

**(1) The trustee's justifications**

Taxes can be complicated. In a business bankruptcy case it is often prudent to have the assistance of an accountant.

What if there are no funds to pay an accountant? That might not be a sufficient excuse for a taxpayer outside of bankruptcy, but in my view the situation is different for chapter 7 bankruptcy trustees. They have a strong argument that

-1-

they act with "ordinary business care and prudence" in deferring the filing of tax returns until there are funds with which to prepare those returns. What other course of action would be prudent for chapter 7 trustees?

In this case, the only source of such funds was a contingent claim for a 2006 tax refund in an unknown dollar amount. Attempting to recover that refund was not easy for several reasons.

Apparently it was difficult to retrieve the debtor's records. It was also difficult to persuade the debtor's accountants to prepare the 2006 return. Those accountants had not been paid for past work. They had uncertain prospects of ever being paid for future work. The estate essentially had no funds to pay them, and the trustee's uncontradicted assertion is that IRS might have denied the hoped-for 2006 refund "for a myriad of reasons . . . ." The trustee also describes numerous communications with the accountants in which he attempted to assist or expedite the process.

The trustee could have applied to the IRS for an extension to file the 2006 tax return, but at oral argument we were told that the maximum aggregate extension would be six months. The IRS has not argued that six months would be anywhere near sufficient, and as the trustee points out it took the IRS itself approximately seventeen months to process the 2006 return once it was filed.

The trustee was charged with liquidating a moribund business with missing records. That situation is analogous to some well accepted grounds for not timely filing a return, such

-2-

as the taxpayer's death or serious illness, or the destruction by casualty of the taxpayer's records. <u>United States v. Boyle</u>, 469 U.S. 241, 243 n.1 (1985). Therefore, for a time at least, the trustee had good reasons for not filing the 2006 return.

But it is one thing to miss a deadline by a few months and another thing to miss it by approximately thirty-three months, which is what happened in this case. The 2006 return was due in April of 2007 and was not filed until January of 2010.

Even that degree of delay might have satisfied the "ordinary business care and prudence" standard if there were sufficient evidence of the reasons for the delay. But the trustee's evidence was not necessarily compelling. On this appeal he has not established that the bankruptcy court committed clear error in finding a lack of reasonable cause for a delay of thirty three months.

**(2) Some undecided issues**

First, we are not asked to allocate blame, nor is it clear that there is any blame. The accountants understandably were reluctant to invest more time on a project for which they might never be paid. The trustee understandably may have been unable to retain alternative accountants or to accelerate the preparation of returns by the existing accountants.

Second, because there were essentially no funds in the estate we are not asked to review the trustee's choices among competing demands for use of such funds. For example, this case does not involve a choice between preparing tax returns or addressing health and safety issues. We generally defer to the trustee's business judgment in managing a bankruptcy estate's

-3-

limited resources.  See Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.), 476 F.3d 665, 669-71 (9th Cir. 2007) (defining contours of business judgment rule in bankruptcy context).  That issue is not before us, nor do we need to decide how the business judgment test might interact with the "ordinary business care and prudence" standard.

Third, the majority questions (in part V.C. of the opinion) whether the tax penalties may be entitled to administrative expense status for reasons other than what was argued on appeal. I agree with the majority that we should remand rather than simply reverse, and that in explaining why we are remanding it is helpful to offer examples of issues that might need to be considered on remand.

The majority offers two such examples:  whether the tax penalties are entitled to an administrative priority under the introductory clause of § 503(b), or alternatively under § 503(b)(1)(C).  I agree that those issues may be appropriate for consideration on remand.

Fourth, the majority asks (at the end of part V.C. of the opinion):  if the tax penalties are not administrative claims then what are they?  The majority then questions whether the tax penalties could be considered prepetition claims.

I do not disagree with providing this example (to clarify why we are remanding).  But I part company with the majority when it states that presumably the penalties cannot be general unsecured claims because they did not arise prior to the petition date.

The law is not fully developed on when a claim is treated

-4-

as postpetition and when it is treated as a contingent, unliquidated prepetition claim (of any priority). Compare, e.g., Centre Ins. Co. v. SNTL Corp. (In re SNTL Corp.), 380 B.R. 204, 220-22 (9th Cir. BAP 2007), aff'd, 571 F.3d 826 (9th Cir. 2009) (attorneys' fees incurred postpetition can be treated as contingent, unliquidated portion of prepetition general unsecured claim), with Gordon v. Hines (In re Hines), 147 F.3d 1185, 1191-92 & n.9 (9th Cir. 1998) (an attorney's right to payment that arises only on performance of postpetition services is beyond the type of "contingent" prepetition claim contemplated by statute) (alternative holding on which majority and concurrence agree).

It is possible that the tax penalties in this case could be treated as contingent, unliquidated claims as of the petition date (and could be included in an amendment to the IRS claim if its asserted administrative priority were to be rejected). The penalties do have prepetition aspects: they arise from liquidating the prepetition business and the untimely filing of the prepetition 2006 tax return which led to the untimely filing of the 2008 and 2010 informational returns. On the other hand, perhaps the tax penalties are more properly viewed as postpetition claims that are beyond what the statute means by "contingent" and "unliquidated" prepetition claims. In either event, the claims' priority is unclear.

I express no views on the correct outcome. My point is that although we are explaining our decision to remand by providing examples of potential issues, I do not interpret our discussion of these particular issues as limitations on the

-5-

bankruptcy court: on remand it can apply its own analysis to whatever issues are properly presented.

**(3) Conclusion**

With the limited caveats expressed above, I join in the majority's well reasoned opinion.